Memorandum of Decision re Motion to Dismiss and Motion for Sanctions
 

 JIM D. PAPPAS, Chief Judge.
 

 I. Introduction
 

 Debtors Robert A. and Bernadine Er-kins (“Debtors”) filed a voluntary Chapter 11 petition with this Court on August 16, 2000. On August 29, 2000, Alfred J. Bian-co, as Plan Administrator of the Estate of Gaston
 
 &
 
 Snow (hereafter “Creditor”) filed a Motion to Dismiss the case (Docket No. 5). After notice, on September 27, 2000, the Court conducted a hearing on the motion. At the hearing, Creditor and Debtors were offered, but declined, the opportunity to submit testimony or other evidence in support of their respective positions. Instead, the parties elected to rely for a record upon the pleadings and documents on file with the Court, which include the Debtors
 
 [1]
 
 bankruptcy schedules and statement of affairs, and the affidavits, exhibits, briefs, and other written submissions made in support and in opposition to the motion. At the conclusion of the hearing, the Court took the issues raised by the motion under advisement. After careful consideration of the record and the arguments of the parties, the Court intends this Memorandum to constitute its findings of fact, conclusions of law and disposition of the motion. Fed. R. Bankr.P. 9014 and 7052.
 

 II. Facts and Procedural Background
 

 Debtors live near Bliss, Idaho. Years ago, they engaged Gaston & Snow, a firm of Boston attorneys, to represent them in complicated litigation with a bank. During and after the litigation, Debtors and the firm became embroiled in a dispute over the amount owed by Debtors to the firm for its services. Gaston & Snow eventually dissolved, and Creditor is the administrator of the bankruptcy liquidation plan adopted for the firm.
 
 [1]
 
 Creditor sued Debtors in federal court in New York. On March 20, 2000, a district court jury returned a verdict in favor of Creditor and against Debtors. On April 6, 2000 the district court entered a money judgment for Creditor against Debtors for $3,915,-206.35.
 

 Debtors have appealed the New York judgment to the Second Circuit Court of
 
 *473
 
 Appeals, where briefing is underway. The district court offered to stay execution on the judgment on condition that Debtors post an adequate supersedeas bond to protect Creditor pending appeal. No bond having been posted, Creditor filed a certified copy of the judgment in Idaho with the U.S. District Court and began proceedings to enforce the judgment against Er-kins’ assets under Idaho law. Creditor recorded the judgment with the Jerome and Gooding county recorders. Creditor caused a writ of execution to be issued and served on Debtors on June 22, 2000, seized several items of their personal property, and scheduled their real property for an execution sale. On the same day, Debtors executed quit claim deeds to their Jerome and Gooding county real property to limited partnerships they control.
 

 Debtors moved the Idaho U.S. District Court to stay the execution and judgment enforcement proceedings on procedural grounds, and on the basis that some of the assets seized were owned by Debtors’ adult children. On August 15 and 16, 2000, Chief Magistrate Judge Boyle entered orders which stayed the execution sales pending further proceedings concerning certain personal property and the Gooding county real estate. However, the Court ordered the sale of the Jerome county real property could proceed as scheduled on August 17. Debtors filed for Chapter 11 bankruptcy relief on August 16.
 

 Debtors’ schedules and statement of affairs, together with other submissions, reveal their extraordinary financial condition. Debtors list assets worth over $16 million. This figure includes no real estate, since the Gooding and Jerome country real property is listed as being owned by the limited partnerships. Debtors hold an interest in the Erkins Revocable Trust which they value at $15,964,765, which in turn owns the limited partnerships. The trust also owns stock in several corporations, including Bliss Valley Growers, Inc., and Seafood Consultants, Inc. Debtors also own artwork, Persian rugs, furs, jewelry, two vehicles (one of which is a leased 2000 model S.U.V.), and an assortment of household furnishings. They assign little real value to these items, other than the vehicle.
 

 Of course, Creditor’s claim of $4.35 million constitutes the lion’s share of the debt listed in the schedules, which totals $4.5 million. Other creditors include some small personal bills, debts owed for legal services, and contingent obligations to Bliss Valley Growers, Inc. and Magic Valley Bank on guarantees. Debts listed other than Creditor’s total about $165,000.
 

 Debtors, who are both in their 70s, list their occupation as self-employed “consultants.” They have no dependents. They list no income from this occupation. They disclose they receive disbursements from the Erkins Revocable Trust and the limited partnerships for family support and litigation expenses in an amount that “varies” each month. Debtors list monthly expenses of $5,380. They allegedly spend $1,000 per month for each of these items: home maintenance, food, clothing and transportation. They spend $810 per month for recreation, entertainment, newspapers, magazines, and such.
 
 [2]
 
 While they lease a vehicle, their monthly statement reflects no lease payment.
 

 The Court understands from the record and arguments of counsel that Magic Valley Growers, Inc., occupies a large facility in which mushrooms are grown, located on part of the Jerome County property. Debtors do not explain in the record their specific relationship with this enterprise, or the nature and extent of that company’s business and assets. Evidently, the Er-kins Trust owns some or all of the stock in the company. At the motion hearing, Debtors’ counsel indicated the corporation
 
 *474
 
 does not lease the premises from Debtors, nor do they receive any income from this enterprise. The Court is therefore left to wonder about the details.
 

 Debtors offer affidavits and documents demonstrating they made efforts both before and after the bankruptcy filing to obtain a supersedeas bond concerning the New York judgment from several sources. In that regard, they suggest to banks and insurance companies that they have a net worth of $15 million, most of which is composed of land value. Debtor Robert Erkins avers he has been unable to obtain a bond because, he and his counsel argue, Creditor’s judgment enforcement proceedings have made others reluctant to deal with him. The record is unclear whether Debtors are continuing in earnest to secure a bond. To assist in the process, Creditor’s attorney offered on the record to release or subordinate the judgment liens on the real property in order to allow Debtors to collateralize a bonding arrangement.
 

 Debtors, in their briefing and in oral argument, suggest that if Creditor’s judgment is upheld on appeal, Debtors will either borrow sufficient funds to pay the judgment in full, or sell off real estate to pay that judgment. While they have not yet done so, they offer to file a disclosure statement and plan of reorganization within the next month detailing their proposal. Debtors urge they have good grounds for reversal of the judgment on appeal, and that the Second Circuit will likely rule sometime in mid-2001.
 

 III. Discussion and Disposition
 

 Creditor moves to dismiss Debtors’ bankruptcy petition for “cause” under Section 1112(b) of the Bankruptcy Code. 11 U.S.C. § 1112(b). Creditor argues Debtors filed the bankruptcy case in bad faith as a litigation tactic, seeking to utilize the automatic stay as a substitute for posting a supersedeas bond, and without any hope of proposing a feasible reorganization plan. Creditor also seeks an award of sanctions against Debtors under Fed. R. Bankr.P. 9011. Debtors argue they are unable, not unwilling, to secure a bond, that Creditor’s claim is well-protected by the value of their assets, and that filing the Chapter 11 case was the only option for them to avoid a “fire sale” of their property.
 

 The Court is guided by abundant statutory and ease law in disposing of Creditor’s motion.
 

 The bankruptcy court may dismiss a Chapter 11 case ‘for cause’ pursuant to 11 U.S.C. § 1112(b). Although section 1112(b) does not explicitly require that cases be filed in ‘good faith,’ courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal.
 

 In re Marsch,
 
 36 F.3d 825, 828 (9th Cir.1994).
 

 The decision whether to dismiss a Chapter 11 ease as a bad faith filing is subject to the discretion of the bankruptcy court.
 
 In re St. Paul Self Storage Limited Partnership,
 
 185 B.R. 580, 582 (9th Cir. BAP 1995). Once the movant establishes the existence of a genuine issue concerning the debtor’s lack of good faith, the debtor bears the burden of proving good faith by a preponderance of the evidence.
 
 In re Setzer,
 
 47 B.R. 340, 345 (Bankr.E.D.N.Y.1985);
 
 In re Yukon Enterprises,
 
 39 B.R. 919, 921-22 (Bankr.C.D.Cal.1984);
 
 In re Spenard Ventures, Inc.,
 
 18 B.R. 164, 166 (Bankr.D.Alaska 1982). “The existence of good faith depends on an amalgam of factors and not upon a specific fact.”
 
 In re Arnold,
 
 806 F.2d 937, 939 (9th Cir.1986). “The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis.”
 
 In re Marsch,
 
 36 F.3d at 828 (citing
 
 In re Arnold,
 
 806 F.2d at 939).
 

 “To determine whether a debtor has filed a petition in good faith, courts weigh a variety of circumstantial factors such as whether: (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are
 
 *475
 
 any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state court.”
 

 In re St. Paul Self Storage Limited Partnership,
 
 185 B.R. at 582-83.
 

 A. The Motion to Dismiss
 

 After a review of the record, and while it is a close case, the Court, in the exercise of its discretion, concludes Creditor’s motion should be granted. Creditor’s motion, and the submissions made in support of that motion, raise a genuine issue concerning whether Debtors’ filing for Chapter 11 relief was made in bad faith. On the other hand, Debtors have not shown by a preponderance of the evidence that their filing satisfies the good faith standard established by the cases cited above. The Court’s conclusion is the result of consideration of several factors discussed below.
 

 Debtors obviously have more than one asset. However, Debtors’ most significant assets consist of their interest, direct or indirect, through their related entities, in real property in Jerome and Gooding county, which now secure Creditor’s judgment. The value of Debtors’ other personal property holdings pale when compared to the amount of Creditor’s claim. This Chapter 11 case is, in essence, about Debtors’ efforts to save their land.
 
 [3]
 
 While not a precise fit, this case does resemble those where the debtor seeks to deny its principal creditor the right to foreclose on a single, significant asset. Such a comparison is certainly more apt than attempts to classify Debtors’ situation with those involving a debtor with a variety of diverse business assets utilized in substantial, ongoing business operations.
 

 While the record is not altogether clear, Debtors have not shown by a preponderance of the evidence that they are actively involved in the operation of a business.
 
 In re St. Paul Self Storage Limited Partnership,
 
 185 B.R. at 582-83. Debtors’ family trust and partnerships apparently hold an equity interest in at least one operating business, Bliss Valley Growers, Inc. However, Debtors did not show they are involved in the management of, or that they even work for, any business. While the mushroom business operates on premises that Debtors (or now their related entities) own, they have not detailed any business relationship arising from the use of their land. Debtors’ personal occupation is listed in the schedules as “consultants,” and according to their Statement of Financial Affairs, they have had only $12,000 in unspecified business income this year. By comparison, they indicate they have received $108,000 in nonbusiness income in 1999, and over $3.5 million in 1998. The source of this “other” income is listed as the Erkins Trust and from the sale of stock. Debtors have not shown how enforcement of Creditors’ claim threatens these sources of income. In short, Debtors have simply not proven they need Chapter 11 relief to protect any on-going business they own.
 

 Debtors have few debts besides that of Creditor, and little in the way of unsecured debts.
 
 In re St. Paul Self Storage Limited Partnership,
 
 185 B.R. at 582-83. They owe no taxes. They are obligated for professional fees presumably arising out of the litigation with Creditor, and they have apparently guaranteed one debt of Bliss Valley Growers, Inc. Without information about the financial condition of that corpo
 
 *476
 
 ration, whether it is likely this guarantee will ever be a concern to them is uncertain. As indicated above, Creditor’s claim composes about 96% of the total debt. Other than Creditors’ claim, there is no indication in the schedules or record that Debtors could not pay all their other creditors in full from their available assets.
 

 The terms of Debtors’ proposed “plan” are, at best, ill-defined. As near as the Court can determine, Debtors’ intention is to continue the litigation with Creditor. If they are eventually compelled to do so by the appellate courts, Debtors will either borrow sufficient funds to pay Creditor, or sell off land and assets to satisfy Creditor’s claims. While Debtors profess a continuing willingness to secure a supersedeas bond to protect Creditor on appeal, the Court views Debtors’ offer with suspicion. So long as the automatic stay in bankruptcy protects Debtors and their assets, why would Debtors be motivated to secure a bond? By the same token, if they are able to obtain a bond, as their counsel conceded at hearing, Debtors would have little need for a Chapter 11 case.
 
 [4]
 

 This last point, in the Court’s opinion, cuts to the heart of why Debtors are not proper candidates for relief under Chapter 11. Debtors’ goal is not to “effect a speedy, efficient reorganization,”
 
 In re Marsch,
 
 86 F.3d at 828, at least in the sense of embarking upon a current restructuring of their financial assets and obligations. On this record, Debtors’ sole objective is to simply stay Creditor’s collection efforts while they continue then-fight on appeal without the financial burden associated with posting a proper appeal bond. If, and only if, the appeal turns out badly for them will Debtors address the need to actually pay Creditor’s claim.
 

 Debtors’ last minute efforts to transfer away their land to their partnerships also offended the Court, and gives insight into their true intentions. While they contend these transfers were executed pursuant to a comprehensive estate plan, their use of handwritten quit claim deeds signed on the same day as Creditor executed on their property, calls their explanation into doubt. It seems more credible that their actions constituted fraudulent conveyances effected to deter Creditor’s collection activities.
 
 See
 
 I.C. § 55-901
 
 et seq.
 

 Debtors point out that Creditor’s claims are adequately protected by the value of their various assets. Assuming this to be correct, however, while Creditor may be eventually be paid, it gains nothing through the pendency of the Chapter 11. No interest or other payments are proposed to be made to Creditor, and no current liquidation of Debtors’ assets are envisioned. If Creditor’s judgment is affirmed on appeal, the Court suspects that Creditor will have received no benefit from the bankruptcy, but will have suffered additional delay in the enforcement of its rights.
 
 See In re St. Paul Self Storage Limited Partnership,
 
 185 B.R. at 583-84.
 

 Debtors, by contrast, are afforded some protection outside of bankruptcy. Of course, if they obtain an adequate bond, the New York district court has indicated it will stay enforcement of Creditor’s judgment. Debtors could also conceivably ask the Second Circuit to stay execution even without a bond, although this Court doubts it worth the effort. Even if Debtors do not secure a bond or a stay, the Idaho district court is available and actively involved in supervising the propriety of Creditor’s collection activities. If their land is sold at below-market prices, as Debtors fear, Debtors are protected by a one year right of redemption under Idaho law. I.C. §§ 11-401 to 11-407.
 

 In short, the Court concludes that this case presents, essentially, a two-party dispute where the rights of those parties are adequately accommodated by nonbankruptcy law.
 
 In re St. Paul Self
 
 
 *477
 

 Storage Limited Partnership,
 
 185 B.R. at 582-83. It is the Court’s view that Debtors’ case is not the kind Congress intended have access to the rehabilitative provisions of Chapter 11. Creditor’s motion should be granted, and the case dismissed.
 
 [5]
 

 B. The Motion for Sanctions
 

 Creditor seeks sanctions against Debtors under Fed. R. Bankr.P. 9011 for the inappropriate filing of the Chapter 11 petition under the facts of this case. However, under recent amendments to that Rule, Creditor’s motion is procedurally flawed. The Rule requires that a motion for sanctions be made separately from other motions or requests for relief. Fed. R. Bankr.P. 9011(e)(l)(A).
 
 [6]
 
 Creditor’s motion for sanctions is found within its motion to dismiss. While the requirement of the Rule seems hyper-technical, its mandate is clear. Creditor having failed to comply with Rule 9011, the Court declines to award sanctions.
 
 [7]
 

 IV. Conclusion
 

 Creditor’s motion raised a genuine issue concerning Debtors’ lack of good faith in filing the Chapter 11 petition in this case. Through their response to the motion, Debtors failed to prove their filing of the bankruptcy petition is motivated by good faith. Based on this record, the Court has not been persuaded the filing was made to effect a speedy, efficient reorganization of any on-going business. Instead, Debtors appear to be utilizing Chapter 11 as an inappropriate alternative to obtaining a su-persedeas bond. Debtors can obtain a prompt adjudication of what is basically a two-party dispute in the nonbankruptcy courts, and should comply with the rules and decisions of those courts. Therefore, good “cause” exists to dismiss Debtors’ petition pursuant to Section 1112(b).
 

 Creditor’s motion to dismiss will be granted by separate order. Because it is procedurally defective, Creditor’s motion for sanctions will be denied.
 

 [1]
 

 . Debtors represent that other parties, including one of the attorneys from Gaston & Snow who represented Debtors in the litigations, have purchased an interest in Creditor’s claim against them. This representation has not been controverted by Creditor, but is not considered material to the Court in disposing of the issues presented here.
 

 [2]
 

 . While the record was not developed in detail, in the Court’s experience, the amounts indicated as spent by Debtors monthly on these kinds of expenses are extremely generous.
 

 [3]
 

 . To be accurate, Debtors' schedules indicate their most significant asset is their interest in the Erkins Revocable Trust. In turn, the Trust owns the various partnerships, which hold title to investment and other securities and the land. Debtors’ schedules do not show the extent of their equity in the Trust, nor the other beneficiaries, but do indicate Debtors are the trustees. However, the record is unclear what, if any, rights or powers Debtors actually exercise in the management of the Trust’s holdings or operation of the businesses it controls.
 

 [4]
 

 . While not technically impossible, the Court is doubtful that Debtors could confirm a plan under the standards required by 11 U.S.C. § 1129(a) and (b) over Creditor's rejection.
 

 [5]
 

 . Technically, there is a second step to the analysis of a Section 1112(b) motion once "cause” for relief has been established. The Court should then determine whether, considering the interests of the creditors and the estate, dismissal or conversion to Chapter 7 is appropriate. 11 U.S.C. § 1112(b);
 
 Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.),
 
 14 F.3d 240, 242 (4th Cir.1994). In this case, neither Debtors nor Creditor have suggested conversion is appropriate. The U.S. Trustee and other creditors, while afforded notice of Creditor's motion, have been silent on this point. On this record, the Court feels the best interests of creditors is served by dismissal. Normally, to ensure fairness after learning of the Court's ruling on Creditor’s motion, Debtors would be afforded a brief opportunity, if they so choose, to voluntarily convert the case to a Chapter 7 liquidation.
 
 See
 
 11 U.S.C. § 1112(a). However, the Ninth Circuit has determined "immediate dismissal [is] the only appropriate course once the court [finds] that the petition was filed without legitimate purpose.”
 
 In re Marsch,
 
 36 F.3d at 829.
 

 [6]
 

 . The same provision requires that a sanctions motion be served on the subject party, and not be filed with the Court for a period of at least 21 days thereafter. Fed. R. Bankr.P. 9011(c)(1)(A). In this fashion, an offending party is afforded an opportunity to correct or withdraw the challenged pleading or paper. However, "this limitation shall not apply if the conduct alleged is the filing of a petition in violation of ... [the Rule].”
 
 Id.
 

 [7]
 

 . While the Rule authorizes the Court to,
 
 sua sponte,
 
 give notice of its intent to consider sanctions, Fed. R. Bankr.P. 9011(c)(1)(B), the Court declines to do so under the facts of this case.