PER CURIAM: *
Vincent Bruno and John Treen filed two motions in the bankruptcy court on August *364 11, 2009, requesting (1) that the bankruptcy court set aside its previous order converting the bankruptcy proceedings for Delta Starr Broadcasting L.L.C. (Delta Starr) from Chapter 11 to Chapter 7; and (2) that the court dismiss the bankruptcy petition of La-Terr Broadcasting Corporation (La-Terr) for lack of subject matter jurisdiction. The bankruptcy court denied both motions. The district court affirmed. Treen appeals.
FACTS
Delta Starr is a Louisiana limited liability company, which was founded in 2000 by Vincent Bruno and Michael Starr (Starr), each of whom owned a fifty percent share in the entity. The sole asset of Delta Starr was a ninety-eight percent stake in La-Terr Broadcasting Corporation, which owned a radio station in Thibodaux, Louisiana. In 2003, John Treen purchased a one-third interest in Delta Starr; as a result of this purchase, Treen, Bruno, and Starr each owned a one-third stake in Delta Starr.
During the years 2004-2005, the apportionment of ownership came into dispute. First, a document dated April 14, 2004, shows a one-third ownership transfer from Starr to Bruno; Bruno alleges that he obtained this additional one-third interest on that date, while Starr alleges that the document was void because the condition attached to his signing was never met and because Treen waited a year before signing, rendering the document void. Second, a document dated March 11, 2005, shows the sale of Treen’s one-third share in Delta Starr to RMS Holdings, a holding company set up by Starr for this purpose. The one-third share was transferred from RMS Holdings to Starr several weeks later, on April 1, 2005. Disputes arose in subsequent litigation regarding- when, and whether, membership and voting rights were transferred, stemming from a failure to duly admit RMS Holdings as a member of Delta Starr.
On March 22, 2005, Bruno filed for voluntary Chapter 11 bankruptcy on behalf of Delta Starr. Treen supported the bankruptcy filing, as evidenced by a letter he wrote the previous day, March 21, 2005. Starr moved to dismiss this bankruptcy petition. The bankruptcy court granted the motion, and Bruno appealed to the district court. That appeal to the district court marked the first of three appeals to the district court throughout the course of this litigation.
Concurrent with this litigation in the bankruptcy court and district court, litigation regarding these parties’ rights in Delta Starr was also underway in the Louisiana state court system. On December 16, 2005, following a hearing, Judge Landrieu of the Civil District Court for the Parish of Orleans entered a decision finding that Treen had irrevocably transferred to Starr his interest in Delta Starr, including his membership and voting rights. As a result, that state court determined that Starr was the two-thirds majority owner of Delta Starr. Because this state court decision was issued while the appeal concerning the Delta Starr Chapter 11 petition was still pending before the district court, Stair filed a supplemental memo in the district court pointing to this decision. Nevertheless, the district court ruled that Starr had only a one-third stake at the time of the bankruptcy filing, finding that Treen’s sale of his one-third interest to Starr had not yet gone through, since RMS Holdings had *365 not been duly admitted as a member of Delta Starr at the time of the filing. For this reason, the district court found that the Chapter 11 bankruptcy petition enjoyed majority support (Bruno’s one-third stake and Treen’s one-third stake), and as a result no formal meeting was necessary to file for the bankruptcy. The district court therefore reversed the bankruptcy court, and denied Starr’s motion to dismiss the Chapter 11 bankruptcy petition.
Following this district court decision, Starr concluded that bankruptcy proceedings for Delta Starr were inevitable, and on February 20, 2006, moved to convert the proceedings to a Chapter 7 liquidation, citing the hopeless deadlock between himself and Bruno. The same day, Starr also filed a voluntary petition placing La-Terr into Chapter 7 bankruptcy, and requested joint administration of the two bankruptcies because the business was inextricably interwoven. Bruno opposed both motions. Agreeing with Starr that the owners were deadlocked, the bankruptcy court ordered the conversion of the Delta Starr bankruptcy to Chapter 7, approved the Chapter 7 proceedings for La-Terr, and appointed a trustee to oversee administration of the assets of both companies’ estates.
Bruno appealed to the district court, marking the second appeal to the district court during the course of this litigation. While this second appeal was pending, the bankruptcy trustee sold the radio station, its equipment, and broadcast license to a third-party, thereby liquidating both companies’ estates. Also during this time, Starr and two other creditors of La-Terr filed an involuntary bankruptcy petition against La-Terr.
On November 8, 2006, the district court affirmed the bankruptcy court, finding that Starr possessed authority to convert the Delta Starr bankruptcy and to place La-Terr into Chapter 7 bankruptcy. The district court found that the conversion to Chapter 7 was appropriate due to deadlock that would prevent successful confirmation of a Chapter 11 plan. The district court found that Starr was a party in interest because he held at least one-third ownership of Delta Starr; because this finding of one-third interest was sufficient, the district court did not make a determination about whether Starr was the two-thirds majority owner.
Following the entry of this judgment, the trustee in 2007 and 2008 paid claims of the debtors’ primary secured creditor, Iberville Bank, and the IRS, and also dealt with other claims, including commencing and settling a preference action against Starr himself in 2009.
In 2008, appellee herein, Orrill, Cordell & Beary, L.L.C. (OCB), the law firm that had represented Starr throughout this litigation, withdrew its representation of Starr and asserted its own claim as a secured creditor of Starr. The bankruptcy court recognized OCB as the transferee of Starr’s unsecured claim against La-Terr.
While these assets were being administered, litigation continued in state court. On May 6, 2009, Bruno, Treen, and Starr obtained entry of a Consent Judgment that stipulated that neither Starr nor RMS Holdings owned any interest in Delta Starr as of March 10, 2005, and dismissed all other claims between the parties with prejudice. The 2009 Consent Judgment was issued by the duty judge without a hearing. The 2009 Consent Judgment is facially inconsistent with the 2005 state court judgment issued by Judge Landrieu, which had found Starr to be the two-thirds majority owner.
Armed with the 2009 Consent Judgment, Bruno and Treen returned to the bankruptcy court to argue that Starr had no ownership interest in Delta Starr and *366 therefore had no authority to convert the Delta Starr bankruptcy or to place La-Terr into bankruptcy. Bruno and Treen filed two motions in the bankruptcy court on August 11, 2009, requesting (1) that the bankruptcy court set aside its previous order converting the Delta Starr bankruptcy to Chapter 7, under Rule 60(b)(5); and (2) that the court dismiss the La-Terr bankruptcy petition for lack of subject matter jurisdiction because Starr lacked proper authority to place La-Terr into bankruptcy in February 2006. OCB, which by this point had taken over Starr’s position as a creditor of Delta Starr and La-Terr, responded; Michael Starr himself is no longer a party.
The bankruptcy court heard the two motions on September 16, 2009, and summarily denied both on September 21, 2009. Bruno and Treen once again appealed to the district court, marking the third appeal to the district court throughout this bankruptcy litigation. The district court affirmed. Regarding the motion to set aside the conversion order in the Delta Starr bankruptcy, the district court found that Bruno and Treen were ineligible for relief from the judgment under Federal Rule of Civil Procedure 60(b)(5), and in the alternative found that judicial estoppel operated to prevent Bruno and Treen from asserting that Starr owned no interest in Delta Starr. The district court also relied on judicial estoppel in affirming the bankruptcy court’s denial of Bruno and Treen’s motion to dismiss the La-Terr bankruptcy for lack of subject matter jurisdiction. Treen, alone, appeals.
DISCUSSION
(1) Motion to Set Aside Conversion Order
Treen first argues that the district court erred in affirming the bankruptcy court’s denial of the motion to set aside the Delta Starr conversion order. This court reviews a district court’s affirmance of a bankruptcy court decision “by applying the same standard of review to the bankruptcy court decision that the district court applied.” In re Martinez, 564 F.3d 719, 725-26 (5th Cir.2009). For rulings on motions under Rule 60(b), we apply the abuse of discretion standard. Seven Elves v. Eskenazi, 635 F.2d 396, 402 (5th Cir.1981).
Treen premises his right to relief from the conversion order on Federal Rule of Civil Procedure 60(b)(5), which has been incorporated into matters governed by the Bankruptcy Rules by Bankruptcy Rule 9024. Fed. R. Bankr.P. 9024; see Matter of Colley, 814 F.2d 1008, 1010 (5th Cir. 1987). Rule 60(b)(5) allows a court to relieve a party from a final judgment when “the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.” Treen argues that he is entitled to relief from the conversion order under both the second and third prongs of this section.
We agree with the district court that the bankruptcy court did not abuse its discretion in denying relief under Rule 60(b)(5), although we rest our affirmance of the bankruptcy court on somewhat different grounds.
First, we find that the bankruptcy court’s conversion order was not “based on an earlier judgment that has been reversed or vacated” as required for relief under the second prong of Rule 60(b)(5). Treen argues that the conversion order was “based on” the 2005 state court judgment that adjudged Starr to be the two-thirds majority owner of Delta Starr, but that this 2005 judgment had since been “reversed or vacated” by the 2009 Consent Judgment, in which Starr stipulated that he held no ownership interest in Delta *367 Starr. We disagree, and find that the 2009 Consent Judgment has not “reversed or vacated” the 2005 judgment for purposes of this case. While this court agrees that the 2009 Consent Judgment is binding with respect to Starr and parties holding under him thereafter, because OCB obtained its interest in this case from Starr before Starr entered into the consent judgment agreement, OCB cannot be considered a party to the consent judgment agreement and therefore cannot be bound by it. See, e.g. Local No. 93, Intern. Ass’n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986) (stating that a court’s approval of a consent decree between some parties cannot dispose of the valid claims of nonconsenting intervenors).
Furthermore, the 2009 Consent Judgment does nothing to supersede the 2005 judgment with respect to a third party such as OCB because it does not criticize or find fault with the earlier judgment, and was moreover signed by a duty judge who had not presided over the 2005 judgment, without the benefit of a hearing. Thus, while the Consent Judgment does serve to put an end to any remaining litigation among Starr, Bruno, and Treen, it is not a substantive determination that something was wrong with the prior determination, and as such cannot be found to have “reversed or vacated” the prior judgment for purposes of this case. Because we have determined that no superseding judgment warrants relief from the conversion order in this case, we need not reach the question of whether the conversion order was “based on” the 2005 state court judgment.
We also agree with the bankruptcy and district courts that relief is not warranted under the third prong of Rule 60(b)(5), which calls for relief when “applying [a judgment] prospectively is no longer equitable.” To the contrary, we find that equitable considerations favor finality and completing the distribution of assets to creditors. Indeed, the trustee has stated that all cash has already been distributed to creditors, and all that remains is the filing of the trustee’s final report. Moreover, even if this court were to set aside the conversion order, Bruno and Treen would not regain control of assets already sold to third parties. See Regions Bank of Louisiana v. Rivet, 224 F.3d 483, 489 (5th Cir.2000).
Finally, we note that this motion is not timely. Rule 60(c)(1) states that a motion under Rule 60(b) “must be made within a reasonable time.” While Rule 60(c)(1) does not specify what is a “reasonable” time for motions relying on Rule 60(b)(5), we find that the bankruptcy judge was not required to grant Rule 60(b)(5) relief on a motion filed so late in this protracted bankruptcy proceeding.
Because we find that the bankruptcy court did not abuse its discretion in denying relief under Rule 60(b)(5), it is unnecessary to reach the district court’s alternative ground of judicial estoppel as pertains to the conversion order. Because judicial estoppel is an extraordinary remedy, we decline to apply it where other appropriate grounds for affirmance exist.
(2) Motion to Dismiss La-Terr Bankruptcy
Treen also argues that the district court erred in affirming the bankruptcy court’s denial of the motion to dismiss the La-Terr bankruptcy proceeding for lack of subject matter jurisdiction. The existence of subject matter jurisdiction is a question of law that is reviewed de novo. In re TXNB Internal Case, 483 F.3d 292, 298 *368 (5th Cir.2007). Any suit lacking subject matter jurisdiction must be dismissed regardless of how long a case has been pending. Temple Drilling Co. v. La. Ins. Guar. Ass’n, 946 F.2d 390 (5th Cir.1991).
Treen’s argument once again rests on the premise that the 2009 Consent Judgment displaced the 2005 state court judgment. If the 2009 Consent Judgment’s stipulation that Starr held no ownership interest in Delta Starr as of March 10, 2005 controls, then Starr was not properly authorized to take control of La-Terr’s board and gain approval to file a bankruptcy petition on La-Terr’s behalf, and the bankruptcy court therefore would lack subject matter jurisdiction over the bankruptcy. See, e.g. Price v. Gurney, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945) (finding that bankruptcy petitions on behalf of a corporation may only be filed by those who have authority to act for the corporation under local law, and when such authority is lacking, the bankruptcy court does not acquire jurisdiction).
We have already determined above that the 2009 Consent Judgment is not binding on OCB, because OCB was not a party to the agreement. Because Treen may not rely on the 2009 Consent Judgment in this proceeding, his argument that Starr had no ownership interest in Delta Starr in 2005 is unsupported. We therefore find that the bankruptcy court did not err in finding that proper subject matter jurisdiction existed, and denying the motion to dismiss.
While the district relied upon judicial estoppel to affirm the bankruptcy court’s denial of this motion, we again decline to apply judicial estoppel given that other appropriate grounds upon which to affirm are present.
CONCLUSION
For the foregoing reasons, the district court did not err in affirming the bankruptcy court’s denial of the motions to set aside the Delta Starr conversion order and to dismiss the La-Terr bankruptcy. Accordingly, the judgment of the district court is
AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be *364 published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.