**IN RE: MID-SOUTH BUSINESS ASSOCIATES, LLC, Debtor.**

**Case No.: 14-11546-JDW**

United States Bankruptcy Court, N.D. Mississippi.

Filed March 30, 2016

Robert Gambrell, Gambrell & Associates, PLLC, Oxford, MS, for Debtor.

## ORDER GRANTING MOTION TO DISMISS (DKT. # 220)

Jason D. Woodard, United States Bankruptcy Judge

This case came before the Court for consideration on the *Motion to Dismiss or, Alternatively, for Conversion to Chapter 7* (the "Motion")(Dkt. # 220) filed by Claude Steven Thompson ("Thompson"); the brief in support of the Motion (Dkt. # 221); the *Joinder* in the Motion (Dkt. # 251) filed by Thomas Windham, Jr. ("Tom"); the *Response* to the Motion (the "Response")(Dkt. # 253) filed by Mid-South Business Associates, LLC (the "Debtor") and the accompanying brief in support of the Response (Dkt. # 254).

An evidentiary hearing on the Motion was held on February 10, 2016. At the hearing, attorney William B. Palmertree appeared on behalf of Thompson (who also appeared and testified); J. Hale Freeland appeared on behalf of the Debtor (for which Thomas L. Windham, Sr., M.D., ("Dr. Windham") and R. Taylor Windham ("Taylor") also appeared and testified); and R. Stewart Guernsey appeared on behalf of Tom. Upon the request of the parties, and at the direction of the Court, on February 19, 2016, both Thompson and the Debtor submitted highlighted excerpts of the deposition testimony of Denise Woods, an accountant for the Debtor (the entirety of which had already been admitted into evidence). The Court then took the Motion under advisement.

## I. INTRODUCTION

On April 21, 2014, the Debtor filed a voluntary chapter 11 bankruptcy petition (Dkt. # 1).[1] The Debtor has continued to manage its affairs and operate its business as a debtor-in-possession since that time pursuant to 11 U.S.C. §§ 1107 and 1108.[2] The Debtor's petition was signed by Dr. Windham, in his purported capacity as "managing member" of the Debtor. Along with the petition, the Debtor filed its Corporate Ownership Statement pursuant to Rule 7007.1 of the Federal Rules of Bankruptcy Procedure, which was also signed by Dr. Windham. The Corporate Ownership Statement reflected that Dr. Windham, Taylor, and Tom each owned more than a 10% equity share in the Debtor (Dkt. # 4). No other owners were identified in the Corporate Ownership Statement.

The issue before the Court in its consideration of the Motion is, at its core, a dispute over the ownership of the Debtor, and, consequently, a question of the corporate authority pursuant to which Dr. Windham, with Taylor's agreement, filed the Debtor's bankruptcy petition. Thompson claims that he also owns a membership/equity interest in the Debtor pursuant to the Debtor's Limited Liability Company

---

1. Various entities related in some way to the Debtor also filed chapter 11 petitions. *See In re Thomas L. Windham, Sr. M.D., & Linda T. Windham,* Case No. 14-11544-JDW; *In re TLW Properties, LLC,* Case No. 14-11545-JDW; and *In re North Mississippi Spine Center, Inc.,* Case No. 14-11547. Taylor also filed his own chapter 7 bankruptcy case, *In re Rodney Taylor Windham,* Case No. 14-11728. All of these cases remain pending in this Court.

2. Unless otherwise noted, all statutory citations are to Title 11, United States Code (the "Bankruptcy Code").

Agreement dated June 1, 1996, and the Assignment of Transfer of Membership Interest (the "Assignment") transferring the membership interest of Dr. Michael Havens ("Havens") to the Debtor dated June 28, 1996 (collectively, the "Operating Agreement"). Thompson argues that Dr. Windham has usurped his alleged authority over the Debtor wrongfully and filed the petition without authority to do so, and, accordingly, that this case should either be dismissed or converted to chapter 7.[3] Tom joins in this argument, asserting that this case should be dismissed. Conversely, the Debtor contends that Thompson and Tom violated their fiduciary duties by committing various bad acts and fraud (including a purported "check kiting" scheme) against the Debtor. As a result of these alleged violations, the Debtor asserts that Thompson and Tom have effectively abandoned their ownership and equity interests in the Debtor, leaving only Dr. Windham and Taylor as members thereof.

It is neither necessary nor appropriate for the Court to determine today whether or not Thompson and Tom engaged in a check kiting scheme or other fraud, or otherwise violated their fiduciary duties as members and managers of the Debtor. Those issues, and the consequences that flow from them, will be determined at a later date.[4] Distilled, the only issue before the Court at this time is who held ownership interests in the Debtor as of the date of the filing of the bankruptcy petition, and consequently, whether this case was filed with the requisite corporate authority.

The Court has considered the pleadings, briefs, testimony, documentary evidence, and the law, and finds and concludes that the Motion is due to be granted, and this case dismissed, for the reasons set forth below.

## II. JURISDICTION & STANDING

■ This Court has jurisdiction pursuant to 28 U.S.C. § 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (O). Thompson has standing to bring the Motion, because he has, at a minimum, a colorable claim of being an equity security holder and manager of the Debtor. Therefore, he is a "party in interest" under § 1109(b) and is entitled to appear before the Court in this case. *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 825 (Bankr.N.D.Tex.2006)("[A]ll persons whose pecuniary interests are directly affected by the bankruptcy proceedings" are parties in interest.). Tom has standing to join in the Motion for the same reasons.

## III. STANDARD FOR MOTION TO DISMISS

■ Pursuant to § 1112(b), "on request of a party in interest ... the court shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ..." 11 U.S.C. § 1112(b). Dismissal or conversion of a chapter 11 case

---

**3.** Although Dr. Windham is the only member of the Debtor to sign the petition and is the person who appears to be directing the Debtor's efforts in this case, it is clear that Taylor supports Dr. Windham's position and actions both prior to and during the pendency of this case.

**4.** There are two adversaries pending in this Court regarding these allegations: *Windham v. Thompson,* Adv. Pro. No. 15-01035-JDW and *North Mississippi Spine Center, Inc. v. Windham,* Adv. Pro. No. 15-01082.

under this section is mandated if the movant establishes cause and none of the statutory exceptions of §§ 1112(b)(2) or 1112(c) apply. *In re New Towne Dev., LLC*, 404 B.R. 140, 146 (Bankr.M.D.La. 2009). However, a bankruptcy petition filed without proper corporate authority must be dismissed independent of any finding of "cause" under § 1112(b), because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case. *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945).

## IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW [5]

■ It is well-settled that objections to subject matter jurisdiction may be made at any time, and may even be raised and decided by the Court on its own motion if the parties overlook or elect not to press such an objection. *Henderson v. Shinseki*, 562 U.S. 428, 434–35, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). If the Court finds that Dr. Windham did not have sufficient corporate authority to file the Debtor's petition, then the Court lacks subject matter jurisdiction over this bankruptcy case and has no alternative but to dismiss it. *See id.*

The Debtor's claim that, by failing to file the Motion earlier in the case, Thompson waived his right to challenge the corporate authority under which the petition was filed is not well-taken. The Court acknowledges that the United States Court of Appeals for the Fifth Circuit has previously held that such a waiver could be a defense against a motion to dismiss for lack of corporate authority. *See Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1064 (5th

Cir.1988)(delay in seeking dismissal of 14 months from petition date)(citing *Alexander v. Farmers' Supply Co. (In re Farmers' Supply Co.)*, 275 F. 824 (5th Cir.1921)(delay in seeking dismissal of only 4 months)). In a later case, however, the Fifth Circuit acknowledged that a bankruptcy court lacks subject matter jurisdiction over a bankruptcy petition filed without the required corporate authority. *Treen v. Orrill, Cordell, & Beary, LLC (In re Delta Starr Broad., LLC)*, 422 Fed. Appx. 362, 368 (5th Cir.2011)("Any suit lacking subject matter jurisdiction must be dismissed regardless of how long a case has been pending.")(citing *Temple Drilling Co. v. La. Ins. Guar. Ass'n.*, 946 F.2d 390 (5th Cir.1991)).

Although *Delta Starr* is an unpublished Fifth Circuit case, and therefore of limited precedential value, its holding was premised on the United States Supreme Court case, *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945), which is, of course, binding authority. In *Price*, the Supreme Court held that if the trial court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative to dismiss the petition." *Id.* at 106, 65 S.Ct. 513. *See also Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir.1997); *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1259 (8th Cir. 1994). Accordingly, if Dr. Windham lacked authority under Mississippi law to file the petition on behalf of the Debtor, then this case must be dismissed.

### A. Corporate Authority to File Bankruptcy

■ The law of the state in which a business entity is organized applies to de-

---

**5.** This order contains the Court's findings of fact and conclusions of law pursuant to Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure. To the extent any finding of fact is construed to be a conclusion of law, or vice versa, it is adopted as such.

termine whether a voluntary bankruptcy petition is filed with proper corporate authority. *In re Wyatt & McAlister, PLLC,* 2010 WL 1709920, *6 (Bankr.S.D.Miss., April 23, 2010)(citation omitted). The Debtor is a limited liability company organized in Mississippi, so Mississippi corporate law applies.[6] *Id.* While corporations and LLCs are different legal entities, LLCs are generally treated as corporations under the Bankruptcy Code. *Id.* at *3 (citing 11 U.S.C. § 101(9)(A)(ii)). An examination of Mississippi law, including both the applicable statutes and the terms of the Operating Agreement, is necessary to determine who the owners of the Debtor were at the time the petition was filed, and, consequently, whether the petition was sufficiently authorized.

**B. Mississippi LLC Law**

 Mississippi adopted the Mississippi Limited Liability Act in 1994. MISS. CODE ANN. §§ 79–29–101, *et. seq.* (1994)(the "1994 Act"). The passage of the 1994 Act allowed business owners to enjoy the benefits of limited liability previously enjoyed by shareholders of corporations, while at the same time providing for tax treatment as a partnership. In 2010, the Mississippi legislature revised the 1994 Act to update and clarify its terms, incorporating some provisions of Delaware's Limited Liability Company Act. *See* Revised Limited Liability Company Act, MISS. CODE ANN. §§ 79–29–101, *et. seq.* (2011)(the "Revised Act"). The Revised Act has been in effect in Mississippi since January 1, 2011, and its

provisions have been applicable to actions of and pertaining to the Debtor (superseding the provisions of the 1994 Act) since January 1, 2012. *See* MISS. CODE ANN. § 79–29–1309 (2011). Accordingly, both the 1994 Act and the Revised Act (collectively, the "Act") apply to the Debtor at different times during its corporate life. In this case, however, the application of either version of the Act yields the same result.

**C. The Operating Agreement**

 "An LLC operating agreement is a contract, subject to contract law." *Bluewater Logistics, LLC v. Williford,* 55 So.3d 148, 159 (Miss.2011). Mississippi law requires that a court "accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." *Ferrara v. Walters,* 919 So.2d 876, 882 (Miss. 2005). The Act serves to fill in any gaps in the Operating Agreement, but the Operating Agreement generally controls. MISS. CODE ANN. § 79–29–123 (2011).[7] The parties agree that the Operating Agreement is valid; they disagree as to its application.

**D. Formation of the Debtor**

At the time the Debtor was formed, the 1994 Act (which then applied) provided the following for the admission of members:

(1) A person becomes a member on the later of:

 (a) The date the original certificate of formation is filed; or

---

**6.** The Court notes that the determination of which state's law applies to the determination of corporate authority is different from the determination of a limited liability company's citizenship for purposes of ascertaining whether a court has federal diversity jurisdiction over a case. Each LLC member's individual citizenship is considered when determining whether diversity jurisdiction exists. *Harvey v. Grey Wolf Drilling Co.,* 542

F.3d 1077, 1079 (5th Cir.2008)(citations omitted).

**7.** An operating agreement may not vary certain requirements of the Act, as specified in MISS. CODE ANN. § 79–29–123(3). No argument has been made that any provision of the Debtor's Operating Agreement attempts to modify any non-variable provisions of the Act.

(b) The date stated in the records of the limited liability company as the date that person becomes a member.

§ 79-29-301 (1994). Pursuant to the Operating Agreement, the Debtor was formed by the execution of the Operating Agreement and by the filing with the Mississippi Secretary of State of a Certificate of Formation pursuant to the 1994 Act.

■■■ The Operating Agreement provided that the term of the Debtor commenced "upon the filing of the Certificate of Formation with the Office of the Secretary of State of Mississippi" and that the term of the Debtor would terminate as provided for otherwise in the Operating Agreement. Accordingly, the Debtor was formed on July 6, 1995, upon the filing of its Certificate of Formation. Although the Operating Agreement called for the members to make initial capital contributions, as set forth below, the membership interests in the Debtor were not conditioned on such contributions being made.[8]

### E. Ownership Interests in the Debtor

The initial ownership interests in the Debtor, as set forth in paragraph 6 of the Operating Agreement, were as follows:

| | |
|---|---|
| Claude Steven Thompson | 27.5% |
| Thomas L. Windham, Jr. | 27.5% |
| Thomas L. Windham, Sr., M.D. | 20% |
| Dr. Michael R. Havens | 20% |
| Rodney Taylor Windham | 5% |

The ownership interest of each member consisted of two parts: (1) a capital interest, including both voting rights and the member's right to a share of the Debtor's assets upon dissolution; and (2) an economic interest, including the right to receive the annual distribution of profits from the Debtor. According to the Operating Agreement, the membership interests of each member were treated as personal property belonging to each member. A member could transfer his economic interest in the Debtor, but the transferee of such economic interest would not be considered a member of the Debtor for any purpose other than with regard to annual allocation of losses or distribution of profits.

The Operating Agreement provided for each member to make an initial capital contribution, in cash, as set forth below:

---

8. *Compare Kilpatrick v. White Hall on MS River, LLC,* —— So.3d ——, 2016 WL 743667 (Miss. Feb. 25, 2016), in which the Mississippi Supreme Court held that an individual's failure to make a capital contribution as required by the LLC's operating agreement resulted in that individual's failure to become a vested member of the LLC. The operating agreement in *Kilpatrick,* however, specifically conditioned membership on the contribution, providing that "[i]t is further acknowledged and understood according to this agreement that no one is named a member until the financial obligation of $500,000 is met, and that no rights and/or privileges to Whitehall property will be permitted to anyone other than a member." There is no such "vesting only upon contribution" language in the Debtor's Operating Agreement. Accordingly, the clear, *unambiguous language controls, and the* membership interests allocated to the members in the Operating Agreement vested without regard to whether capital contributions were made. To be sure, the other members of the Debtor could still have enforced the contribution requirements of the Operating *Agreement through a breach of contract suit;* however, no other member ever attempted to do so.

| | |
|---|---|
| Claude Steven Thompson | $9,281.25 |
| Thomas L. Windham, Jr. | $9,281.25 |
| Thomas L. Windham, Sr., M.D. | $6,750.00 |
| Dr. Michael R. Havens | $6,750.00 |
| Rodney Taylor Windham | $1,687.50 |

The Operating Agreement called for individual capital accounts to be maintained for each member, and contained instructions about how the capital accounts should be maintained. The testimony at the hearing, however, showed that capital accounts were not maintained in accordance with the Operating Agreement.

In the Operating Agreement, the members agreed that future advances might be necessary to fund the Debtor's business, and the Operating Agreement provides that such advances will be made by each member in proportion to his membership interest. No special provisions for making capital calls are included in the Operating Agreement. The Operating Agreement does provide, though, that if a member is not able or willing to make an advance agreed to by the members owning at least a majority (or more, if called for under the Operating Agreement) of the interests in the Debtor, then those members who make advances may make additional advances, and the interest of the non-advancing member "will be proportionally reduced." In this case, it is undisputed that Dr. Windham made several, substantial additional capital contributions to the Debtor. However, those contributions were made without a vote, approval or a meeting of the membership. There is no provision in the Operating Agreement that supports the position taken by the Debtor that a member (Dr. Windham) can make an advance or capital contribution (absent a capital call) and thus unilaterally dilute the interests of the non-advancing members. *See Sanders v. Ohmite Holdings, LLC,* 17 A.3d 1186 (Del.Ch.2011); *Walker v. Resource Dev. Co. Ltd., LLC,* 791 A.2d 799 (Del.Ch.2000)(holding there could be no dilution of an expelled member's interest where there was no proof of a valid capital call or how other members met the alleged capital call).[9]

The Operating Agreement provides that the members specifically understand and agree that the interest of each member in the LLC is personal property, and that no member can transfer or convey his interest in the Debtor except in accordance with the Operating Agreement. Section 21 of the Operating Agreement contains detailed requirements for the transfer, assignment, or conveyance of membership interests in the Debtor, all of which are required to be in writing. The Operating Agreement also provides detailed requirements for a member's withdrawal from the Debtor, which must be accomplished in the specific manner set forth therein, in writing. Only one written transfer of membership has been effectuated since the Debtor was formed. On June 28, 1996, in accordance with the procedures set forth in the Operating Agreement, Dr. Michael R. Ha-

---

9. Dr. Windham's capital account balance (should one have been maintained) may have been increased by his additional advances pursuant to the Operating Agreement, but there is no provision under which his ownership or voting interest would have been likewise increased by his unilateral decision to infuse more capital into the Debtor.

vens transferred his membership interest in the Debtor back to the Debtor. This transfer was signed by all five members of the Debtor, and resulted in Dr. Havens's 20% ownership interest in the Debtor being credited to the remaining members pro rata according to their pre-existing ownership interest. After the Assignment, the ownership interests of the remaining members were as follows:

| | |
|---|---|
| Claude Steven Thompson | 34.375% |
| Thomas L. Windham, Jr. | 34.375% |
| Thomas L. Windham, Sr., M.D. | 25.0% |
| Rodney Taylor Windham | 6.25% |

No other documents evidencing any transfer or change of ownership were admitted into evidence, and no testimony regarding any such transfer was presented to the Court at the hearing.[10]

### F. Management of the Debtor

The Operating Agreement provides for the Debtor's business to be managed at the direction of two managers, who must act unanimously: Thompson and Tom (the "Managers"). The Operating Agreement gives the Managers the "full, exclusive and absolute right, power and authority to manage the business operations of the [Debtor] as necessary in the ordinary course of business," subject only to the limitations contained either in the Operating Agreement itself or the Act. A manager who is also a member (in this case, both Thompson and Tom), remains entitled to all of the rights of a member in addition to his rights as a manager. Pursuant to the Operating Agreement, members who are not managers (Dr. Windham and Taylor) have no power to bind the Debtor or to act on behalf of the Debtor, except by specifically authorized voting rights set forth in the Operating Agreement and the Act.

### G. Voting Rights

Pursuant to the Operating Agreement, certain matters outside of the ordinary course of business could only be undertaken or accomplished upon a vote of the members owning at least two-thirds of the interests in the Debtor:

(a) Acquire, lease, renovate, improve, own, sell, exchange and dispose of any property or asset as determined to be necessary or appropriate or in the best interests of the [Debtor], and to acquire and grant options for the purchase or sale of any such property;

(b) Borrow money, issue evidences of indebtedness in connection therewith, refinance, increase the amount of, modify, amend, or change the terms of, or extend the time for the payment of, any indebtedness or obligation of the [Debtor], and secure such indebtedness by mortgage, deed of trust, pledge or other lien on assets of the [Debtor];

10. Over the past few years, since Dr. Windham has effectively taken over the management of the Debtor, various statements of ownership interests have been made on tax documents, and even on the bankruptcy petition. These have not been consistent and there is no evidence regarding the manner in which these interests were allocated. The Debtor's accountant testified in a deposition that allocations made on tax documents for 2013 and 2014 were made at Taylor's direction, and were not based on any other documents of the Debtor.

(c) Sue on, defend, or compromise any and all claims and liabilities in favor or against the [Debtor] and submit any and all such claims or liabilities to arbitration; and

(d) Hire employees, agents and independent contractors in connection with the [Debtor's] business and pay such salaries or remuneration to said employees, agents and independent contractors.

This provision further provides that if a member is not willing or able to execute any documentation, including guaranties, necessary to effectuate an approved transaction, then the member is then "obligated to transfer his ownership interest in the [Debtor] to it for purchase price equal to the member's total cash contributions as of the date that the member notifies the [Debtor] he is not able or willing to take such action less any cash distributions made to the member prior to said date."

Either a manager or members owning a majority of interests in the Debtor are authorized to call a meeting of the members. The Operating Agreement requires that notice of any such meeting be given between 5 and 30 days prior to the meeting. Notices are required to state the subject matter of the meeting, and only business regarding that subject matter is authorized to be transacted at the meeting. In lieu of a meeting, actions may be taken without a meeting if a sufficient percentage of the membership interests agree in writing to take such action. Such written consents are required to be maintained in the Debtor's records.

## H. The Operation of the Debtor

The Managers operated the Debtor under the terms of the Operating Agreement for several years. Sometime in or around 2012, however, Dr. Windham and Taylor began to exercise more control over the Debtor. They credibly testified that Thompson and Tom failed to perform the day-to-day functions necessary for the effective operation of the Debtor, and, in fact alleged that Dr. Windham uncovered evidence of fraud being perpetrated by the Managers against the Debtor. Dr. Windham and Taylor both credibly testified that their exercise of control was due to the Managers' inaction or ineffectiveness (at a minimum) and was necessary to preserve the Debtor and its assets. However, this transfer of control was effected by Dr. Windham and Taylor simply performing tasks or infusing money as they deemed necessary to try to salvage the Debtor's affairs, but without any official action by the members of the Debtor or pursuant to the terms of the Operating Agreement.

On March 25, 2011, Dr. Windham filed a Registered Agent/Office Statement of Change with the Mississippi Secretary of State, changing the registered agent of the Debtor from Tom to Taylor. Dr. Windham signed this document as "president/member" of the Debtor, although it is clear that there was never a "president" of the Debtor, that Dr. Windham was not a manager of the Debtor, and that he was not authorized as a member to take this action.

Thereafter, on September 24, 2012, Taylor filed a Certificate of Amendment with the Secretary of State, certifying that Dr. Windham was elected to replace Tom as "managing member" of the Debtor. However, Dr. Windham and Taylor concede that no meeting was ever called or noticed, nor any vote taken of the membership, to effectuate any change to the Debtor's management.

On October 10, 2012, Dr. Windham and Taylor held a special meeting of the Debtor in which they, claiming to hold the majority interest in the Debtor, approved the refinance of a $1,655,100.07 loan with Merchants and Farmers Bank. This type

of transaction would have required a two-thirds vote of the membership, and not just a simple majority. Furthermore, Dr. Windham and Taylor concede that no notice of this special meeting was provided to Thompson or Tom as required by the Operating Agreement.

On September· 17, 2014, Dr. Windham and Taylor held another special meeting. Again, they concede that no notice was given to Thompson or Tom The minutes of this special meeting provided as follows:

> Claude Steven Thompson (hereinafter "Steve Thompson") and Thomas L. Windham, Jr. (hereinafter "Tom Windham, Jr.") relinquished their rights, responsibilities and any interests in the [Debtor] upon abandoning the [Debtor] and due to their tortious and illegal activity related to the [Debtor] and its assets. Mr. Thompson and Mr. Windham are subject to claims being made against them in litigation currently before the U.S. District Court for the Northern District of Mississippi, Case No. 14-cv-099-NBB-SAA, on behalf of the [Debtor] and its non-culpable and remaining Members of the [Debtor], Thomas L. Windham, M.D. and Rodney Taylor Windham.

■ In these special minutes, Dr. Windham and Taylor for the first time assert (in writing) that Thompson and Tom are no longer members of the Debtor, for two reasons: (1) their alleged abandonment of the Debtor; and (2) their alleged tortious and illegal activity related to the Debtor and its assets. Dr. Windham and Taylor acknowledge that the tort claims against Thompson and Tom have not yet been adjudicated and, in fact, remain pending. Dr. Windham and Taylor cite to no provision in the Operating Agreement or the Act to support their contention that, even if their allegations are proven true, Thompson and Tom's fraud, bad acts, or

even abandonment of their duties as managers give rise to Dr. Windham and Taylor's ability to either expel them as managers or members of the Debtor or divest them of their membership interests in the Debtor. In fact, the Revised Act provides that withdrawal of a member from an LLC must be done as specified in the operating agreement or upon the written consent of all members. MISS. CODE ANN. § 79-29-303 (2011). No such withdrawal has been attempted by either Thompson or Tom Furthermore, unless otherwise provided by the certificate of formation or written operating agreement, an LLC has no power to expel a member. *Id.* The Operating Agreement does not provide for the expulsion of a member. Accordingly, under the Act and the Operating Agreement, neither Manager's alleged "abandonment" of their interest in the Debtor, nor their alleged bad acts, serve to divest them of their ownership and voting interest in the Debtor.

### I. Failure to Make Capital Contribution

■ Finally, the Debtor now claims that in addition to the reasons cited in the minutes of the October 2014 special meeting, Thompson and Tom do not have any ownership interest in the Debtor, because neither made the initial capital contributions called for in the Operating Agreement. Although Thompson testified that down payments he made personally for properties purchased by the Debtor and/or loan proceeds he obtained on the Debtor's behalf were agreed upon by the members to serve as his capital contribution, it is not necessary for the Court to determine whether this was, in fact, the case.

Neither the formation of the Debtor, nor the allocation of initial memberships, was conditioned on the appropriate capital contributions being made. Ownership vest-

ed in the Members set forth in the Operating Agreement upon the filing of the Certificate of Formation. Nothing further was required by the documents or by statute. Furthermore, it is undisputed that Taylor also did not make a capital contribution upon formation, and yet the Debtor is arguing that somehow that Taylor's ownership interest not only vested, but also increased over time. Finally, the Debtor operated for many years before any allegation was made regarding Thompson or Tom's forfeiture of their membership interests in the Debtor, and then the only reasons cited for such forfeiture were their alleged misdeeds and abandonment. If Thompson and Tom's, memberships never vested, then there would be nothing to forfeit. Even if the failure to make the capital contributions would have mattered in the beginning, it is too late for the Debtor to raise the issue now, as it has been waived. *See Sanderson Farms, Inc. v. Gatlin*, 848 So.2d 828, 837 (Miss.2003)("A party to a contract may by words or conduct waive a right to which he would otherwise have been entitled.")(citation omitted). Thompson and Tom were permitted to act as members and managers of the Debtor, signing documents on behalf of the Debtor and guaranteeing its debts. If the other members of the Debtor did not believe Thompson and Tom to be members, then they had ample opportunity to raise that issue earlier in the life of the Debtor.

### J. Authority to File the Bankruptcy Petition on Behalf of the Debtor

The Operating Agreement vested the Managers with the sole right to manage the business operations of the Debtor as necessary in the ordinary course of business, subject to any restrictions found in the Act. The Operating Agreement lists certain situations which require a two-thirds majority vote of the membership interests. Although filing a bankruptcy petition is not an enumerated action explicitly requiring a two-thirds majority vote, it is well-settled that "a decision to file for bankruptcy protection is a decision *outside the ordinary course of business,* even for an entity in dissolution." *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 379 (Bankr.D.Or.2003)(emphasis added). Accordingly, even the Managers were not authorized to file for bankruptcy protection without a membership vote, because doing so is not within the scope of their authority as Managers under the terms of the Operating Agreement.

In addition, under § 541 of the Bankruptcy Code, the filing of a bankruptcy petition transfers all of a debtor's interests in property to the that debtor's bankruptcy estate. 11 U.S.C. § 541. Because "the filing of a voluntary bankruptcy therefore automatically results in a transfer of all of the debtor's assets to the bankruptcy estate," the provision in the Operating Agreement which requires a two-thirds vote for the acquisition, sale, exchange or disposition of the Debtor's property also applies to the filing of a bankruptcy petition. Without a valid vote of the Debtor's membership, which no one alleges actually occurred, none of the members, including Dr. Windham, had the authority to sign or file the petition on behalf of the Debtor.

### V. CONCLUSION

As set forth above, the membership interests in the Debtor immediately preceding the filing of the petition were as follows:

| Claude Steven Thompson | 34.375% |
|---|---|
| Thomas L. Windham, Jr. | 34.375% |
| Thomas L. Windham, Sr., M.D. | 25.0% |
| Rodney Taylor Windham | 6.25% |

The Managers clearly abandoned their management duties sometime prior to the bankruptcy filing, but in doing so, they did not relinquish their equity interests in the Debtor. Aside from Dr. Havens' transfer of his membership interest back to the Debtor early in its corporate life, no other transfer of membership interest in the Debtor has been made.

Furthermore, the filing of a bankruptcy petition on behalf of an LLC is an extraordinary action that would have required a two-thirds vote of the membership interests in the Debtor pursuant to the Operating Agreement. *See In re Arkco Properties, Inc.*, 207 B.R. 624, 628 (Bankr.E.D.Ark.1997)(collecting authority for the proposition that "a bankruptcy filing is a specific act requiring specific authorization."). Such a vote never took place, but if it had, both Thompson and Tom would have been required to vote in favor of filing the petition for the petition to be authorized under Mississippi law. It was not. Furthermore, Dr. Windham did not have the authority to sign the petition on behalf of the Debtor.

In *Price v. Gurney*, the Supreme Court acknowledged that while those who filed the bankruptcy petition on behalf of the corporation may have a "meritorious case for relief," (and in this instance, there is no doubt that should the Debtor's allegations against the Managers prove true, that would be the case here), there is no "indi-cation that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation." *Price*, 324 U.S. at 107, 65 S.Ct. 513. There is no provision in the Bankruptcy Code giving minority equity owners the right to file what amounts to an attempted derivative bankruptcy petition on behalf of a company. Like in *Price*, the question here becomes "whether the bankruptcy court as an incident of its bankruptcy powers can give [Dr. Windham and Taylor] relief which, if their charges are taken as true, they might obtain in another forum." *Price*, 324 U.S. at 405, 65 S.Ct. 781. Like the trial court in *Price*, this Court is not the proper forum for that relief.

Although the Court is sympathetic to the Debtor's arguments that sending notice or attempting to work through the Debtor's financial issues with the Managers would have been futile, given the allegations raised by the Debtor against the Managers, such sympathy does not confer subject matter jurisdiction where none exists. Furthermore, the Court fully understands that the members are probably not able to work efficiently together at this point, even were all of the members willing to try to do so. That said, the Debtor is not without a remedy. Section 79–29–803 of the Mississippi Code provides procedures for the judicial dissolution of an LLC

through a chancery court action in cases of a member or manager's fraud or abuse of authority, as has been alleged. Miss. Code Ann. § 79–29–803(1)(b) (2013). These procedures include the ability for a court to appoint a receiver or custodian to wind up an LLC's affairs, who perhaps could even put the LLC into a bankruptcy case. *Id.*; *See also In re Statepark Building Group, Ltd.*, 316 B.R. 466 (Bankr.N.D.Tex.2004)(holding that under Texas law, a receiver has the authority to file a bankruptcy petition on a partnership's behalf).

Because Dr. Windham filed the Debtor's bankruptcy petition without sufficient corporate authority under the Operating Agreement and applicable Mississippi law, the Court lacks subject matter jurisdiction over this bankruptcy and has no alternative but to dismiss this case.[11] Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DE-CREED** that the Motion is **GRANTED** and this case is **DISMISSED.**

**SO ORDERED.**

11. At the hearing, the Court inquired of Thompson and Tom's respective counsel if they preferred conversion or dismissal, assuming the Court found in favor of Thompson and had to choose whether dismissal or conversion was most appropriate. Counsel for Tom unequivocally stated that Tom preferred dismissal. Because of Tom's ownership percentage, as set forth above, no bankruptcy petition could be authorized without his consent. Accordingly, even if the lack of authority at the outset of the case could be "cured" by the later consent of the equity owners of the Debtor, such consent does not exist in this case.